UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CR-20792-JLK

UNITED STATES OF AMERICA

vs.

GEOVANYS GUEVARA,

Defendant.

_____/

## ORDER ON THE MANDATE

THIS MATTER comes before the Court upon the Eleventh Circuit's Mandate of the Court issued on August 1, 2018 (DE 143). The Court has reviewed the sentencing memorandum submitted by Defendant (146) on September 3, 2018 and the government (DE 147) on September 9, 2018. The Court has likewise considered the relevant portions of the record and the arguments of the parties advanced during the December 6, 2018 sentencing hearing. After careful review, the Court finds that Defendant's Objections to the two-level enhancement for obstruction of justice should be denied.

## BACKGROUND

This case arose from the Defendant Geovanys Guevara's ("Defendant" or "Guevara") use of a straw buyer to purchase four different luxury vehicles (a Porsche, a Ferrari, a Lamborghini, and a Rolls Royce) from Sanfer Sports Cars. On May 21, 2014, law enforcement agents with the Internal Revenue Service ("IRS") visited the Defendant at his home to discuss their investigation into his purchases of luxury vehicles. The Defendant made a number of incriminating statements, including, *inter alia*, that he was the true owner of all the vehicles that the agents had mentioned (*see* DE 130:116-17; DE 139:47); that title to the cars had been placed in the straw buyer's name because he could not get insurance for the vehicles (*see* DE 130:117; DE 139:48); and that he had purchased the cars at Sanfer, he chose the vehicles, paid for them and then instructed the straw buyer to go to the dealership and be the registered owner of the vehicles (*see* DE 130:118; DE 139:49-50).

On October 23, 2014, Defendant was charged by indictment with four counts of causing or attempting to cause the filing of false currency transaction reports of cash payments of over $10,000 received in a trade or business, in violation of 31 U.S.C. § 5324(b)(2) and (d)(2) and 18 U.S.C. § 2 (DE 1). The Defendant pled not guilty, proceeded to trial, and was found guilty of Counts 2, 3 and 4 of the Indictment, and not guilty of Count 1 (DE 81). The Defendant appealed (DE 113).

On July 11, 2018, the Eleventh Circuit affirmed the Defendant's conviction, but vacated the Defendant's sentence and remanded the case for consideration of "whether and why a two-level enhancement for obstruction of justice is warranted." Mandate of USCA (DE 143). Accordingly, on August 17, 2018, the Court ordered the parties to submit briefs for the Court's consideration in determining whether a two-level enhancement for obstruction of justice is warranted (Order on the Mandate at 1 (DE 145)) and held a hearing to discuss the same on December 6, 2018. Against this evidentiary backdrop, the Court makes the following factual findings:

1.     On February 19, 2015, United States Magistrate Judge Edwin G. Torres held a hearing on the Defendant's Motion to Suppress.

2.     The Defendant testified under oath at the hearing, as did four law enforcement officers. *See generally* Tr. of Mot. to Suppress Hr'g. The witnesses testified regarding the Defendant's encounter with law enforcement agents at his home on May 21, 2014.

3.     On the afternoon of May 21, 2014, at approximately 2:16 p.m., special agents and task force officers for the IRS went to the townhouse apartment where Defendant resided. *See id.* at 39:16–24.

4.     At Defendant's residence, agents conducted a "knock and talk" for the purpose of interviewing Defendant before executing a seizure warrant for his vehicle. *Id.* at 40:22–25.

5.     The Defendant was never given *Miranda* warnings during his conversation with the law enforcement officers. *Id.* 49:13–14.

6.     The agents' interview with Defendant was casual in tone and reflected a normal conversation. *Id.* at 45:10–14.

7.     Defendant was not placed in handcuffs or threatened. *Id.* at 49:13–14; 91:5–9.

8.     The agents testified that the Defendant never asked permission to leave to pick up his daughter from school, and that the Defendant was told he was free to leave or end the interview at any time. *See, e.g., id.* at 34:1–14; 66:14–67:5; 72:5–11; 93:2–8.

9.     Task Force Officer Mohan Britton testified that, while they were there, the Defendant's wife brought their child over to a neighbor's house. *Id.* at 104:8–21.

10.     Special Agent Harlan Daar also recalled Defendant's wife asking if the child could go to the neighbor's house. *Id.* at 64:1–5.

11.     However, the Defendant testified differently than the law enforcement officers did regarding the non-custodial nature of the conversation. The Defendant testified that agents never told him that he had the right to leave or terminate the interrogation, and that they would not let him go anywhere. *Id.* at 115:21–25. His statements were as follows:

> "Q. At any point were you told that you had the right to leave or terminate the interrogation?
> A. No.
> Q. Were you able to leave and go somewhere else?
> A. No. No. **They would not let me go anywhere.**"

12.     He stated that the agents took away his cell phone. *Id.* at 116:11–12.

13.     He stated that he asked the agents permission to pick up his 11-year-old daughter at school, but the agents did not let him. *Id.* at 116:23–117:5. His statements were as follows:

> "Q. Did you or your wife ask for permission to pick up your daughter at school?
> A. Yes.
> Q. And what were you told?
> A. **That, no, that we could not go.**
> Q. So you were not allowed to pick up your 11-year-old daughter at school?
> A. No."

14.    He testified that a neighbor had to pick his daughter up at school instead. *Id.* at 117:6–7.

15.    However, during cross-examination, the Defendant testified that he is the one who routinely picks his daughter up from school, and picks her up promptly. *Id.* at 123:19–124:5.

16.    He admitted that on Wednesdays, his daughter gets out of school around 1:50 p.m. *Id.* at 123:14–16. May 21, 2014, the date of the interview, was a Wednesday. *Id.* at 128:1–3. Thus, the Defendant's daughter had gotten out of school and been picked up prior to the Defendant's conversation with the law enforcement officers.

17.    The agents testified credibly regarding their encounter with the Defendant. The agents all testified consistently that Defendant was told he was free to leave or end the interview at any time.

18.    The Defendant's testimony regarding the fact that he was not free to leave during his conversation with the agents was not credible.

## DISCUSSION

The Sentencing Guidelines provide for a two-level increase to a base offense level if a defendant obstructed justice. U.S.S.G. § 3C1.1. Perjury is one type of conduct that justifies an obstruction of justice enhancement under U.S.S.G. § 3C1.1. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997); *see also* U.S.S.G. § 3C1.1, application note 4 (noting that the enhancement applies to conduct including providing materially false information to a judge or magistrate judge). To justify an obstruction-of-justice enhancement, a court must find that sufficient evidence exists under a preponderance of the evidence standard. *United States v. Hobbs*, 619 F. App'x 843, 845 (11th Cir. 2015).

Here, a review of the record shows that the Defendant committed perjury during the motion to suppress hearing. The Defendant repeatedly testified that he was not free to leave when agents came to his house to speak to him. He testified that agents never told him that he had the right to

leave or terminate the interrogation, and that they would not let him go anywhere. Tr. of Mot. to Suppress Hr'g at 115:21–25. He also testified that he asked to pick up his daughter from school and that the agents told him he could not go. *Id.* at 116:23–117:5. This information was also materially false.

The Defendant's testimony at the motion to suppress hearing could have been case-dispositive given that the Defendant argued that his indictment came as a result of statements made under duress. Mot. to Suppress at 4. Had the Court believed the Defendant's repeated testimony that agents denied him permission to leave his house, and therefore was subject to a custodial interrogation, the motion to suppress would have been granted and the Government's case would have been significantly impacted. Thus, the Defendant's false testimony was material and warrants a two-level enhancement for obstruction of justice. *See Dunnigan,* 507 U.S. at 95; *United States v. Lincecum,* 220 F.3d 77, 80–81 (2d Cir.2000) (affirming obstruction of justice enhancement based on defendant making false statements in his affidavit in support of a motion to suppress); *United States v. Matos,* 907 F.2d 274, 275 (2d Cir. 1990) (affirming obstruction of justice enhancement based on defendant's false testimony at a suppression hearing).

Accordingly, it is hereby **ORDERED, ADJUDGED and DECREED** that the Defendant's Objections to Paragraphs 20, 21 and 28 of the PSI are **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 15th day of January, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

5